Lincoln J.
The settlement of the pauper is derived from that of her former husband, Thomas Chase, and upon the facts agreed in the case, his settlement must be determined upon the question of the sufficiency of the evidence of his being warned out of the town of Uxbridge, pursuant to the provincial acts of 4 Will, & Mar. c. 13, and 12 & 13 Will 3, c. 10.
These statutes taken together, provide, that if any person should continue to reside in any town or precinct for the space of twelve months, not having been warned by the constable or other person whom the selectmen should appoint for that service, to leave the place, and the names of such persons, with the time of their abode there, and when such warning ivas given them, returned into the Court of Quarter Sessions, every such person should be reputed an inhabitant of such town or precinct, and the proper charge of the same, in case, through sickness or otherwise, they should come to stand in need of relief.
It is agreed that Thomas Chase, with his wife, the pauper, resided more than twelve months, within the period of the aforementioned statutes, in the town of Uxbridge. The only evidence of the warning, bv which the effect of this *465 íe&dence to give them a settlement is attempted to be avoided, is in the records of the Court of General Sessions, from which it appears, that at a term of that court in May 1766, the selectmen of Uxbridge were allowed to enter their caution against Chase and others, “ whom the selectmen refused to admit inhabitants, they having been duly warned to depart out of said town, as by a warrant under the hands and seal of said selectmen, dated the 6th day of January last, and constable’s return thereon, on file, appears.” The warrant itself is not produced, and is not to be found, probably having been misplaced, or lost by the subsequent lapse of time, and under these circumstances it is contended by the counsel for the defendant town, that its sufficiency in all the particulars required by the laws then in force may be inferred from the fact, that the Court of Sessions, upon its return, allowed the selectmen to enter their caution against the persons therein named, and recognised the warning to have been duly made. Th s position might be tenable, if we could find that the Court of Sessions were required by the statute to take cognizance of the fact, or exercise any judicial power on the subject. All the acts to be done in relation to the warning were merely ministerial, and to be performed by the officers of the town. The warrant is to be issued by the selectmen, the warning to be given by the constable or other officer appointed for the service, and the return made into the Court of Sessions. No record even of the process, or its execution, is required, and the return was directed by law, probably for the convenience of towns which might afterwards become interested in finding the evidence of facts, upon the existence of which the settlement of paupers was made to depend. The court could not reject the return, however defective. Writs and executions, by the statutes of the commonwealth, are made returnable into the courts from which they issue, yet the truth of the facts returned, or the rights of the parties interested in the service of process, cannot be affected by any order of those courts upon the subject. The provincial act of 4 W. & M. c. 13, requires, that the names of the persons, with the time of their abode in the town, and when the warning was given, should be returned. These facts *466 should all appear by the return itself, for strictly speaking they are the proper matter of a correct return. Over this subject the Court of Sessions could have no control. The return was not evidence to them for any purpose, nor had they any other authority than to permit it to be filed, that the legal evidence of the facts which it contained, might be preserved in the manner pointed out by the statute. What might be the effect of an extrajudicial record of a warrant and return, which should contain an expression of all the facts required by the statute, to supply the want of the warrant itself in case of loss, it is not now necessary to determine, since the record in the present instance is altogether defective in these particulars. The case of The Inhabitants of Hamilton v. The Inhabitants of Ipswich, 10 Mass. R. 506, was decided upon the ground, that a warning was insufficient, unless it appeared to the Court that the requisites of the statute had been complied with. The reasoning upon which that opinion is supported is alike applicable to the case at bar. There is indeed an intimation there made by the Court, that the facts required by the statute to be returned, may appear from the records of the Sessions, but even that intimation is not to be understood as intending more, than that if the facts were distinctly set down in the record, as they should be in the return, it might be competent.
No presumption can be admitted in a case like the present, that the return was made in conformity with the provisions of the statute, as we have had much occasion to notice the great irregularity and remissness with which transactions of this kind were conducted in that early period of the country. Such presumption, in the present instance, would be repelled by the truth of the observation made at the bar, that in the records of other returns made about the same time, the facts which are here found defectively stated, are distinctly expressed.
As it does not appear in the case before us, that the time of the abode of Thomas Chase in the town of Uxbridge, and the time when the warning was given him, were returned to the Court of Sessions, we are of opinion, that the evidence is insufficient to prevent his gaining a settlement in Uxbridge *467 by the residence which the case finds he had there for more than twelve months previous to the 10th day of April 1767, when the mode of gaining a settlement by residence without warning ceased.[1]
According to agreement of the parties the defendants must be defaulted.

 It is a well known maxim of the law, that “ Omnia presumuntur rite et solenniter esse acta, donee probetur in contrarium.” 2 Stark. Ev. (4th Am. ed.) 1250 ; Society for Propagating the Gospel v. Young, 2 N. Hamp. R. 310 ; Colman v. Anderson, 10 Mass. R. 105 ; Monumoi v. Rogers, 1 Mass. R. 159, Pitts v. Temple, 2 Mass. R. 538 ; Pejepscot Proprietors v. Ransom, 14 Mass. R. 145 ; Blossom v. Cannon, id. 177 ; Knox v. Jenks, 7 Mass. R. 488 ; Gray v. Gardner, 3 Mass. R. 399 ; Ward v. Folly ; 2 Southard, 482 ; Ives v. Isham, 7 Connect. R. 505 ; New Haven v. Vergennes, 3 Vermont R. 89 ; Battles v. Holley, 6 Greenl. 145 ; Whittlesey v. Starr, 8 Connect. R. 134 ; Sharpe v. Abbey, 2 Moore & Payne, 312. It is rather unusual to presume, that one man has been in fault because another has been so, or to suffer the fault of one man or of any number of men to rebut a presumption that may arise in favor of another or of the acts of another. It comes very near to making out a custom to do wrong.